IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MORSE, | No. C 10-05594 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, ET AL., | |
| Defendants. | |

Defendants' partial motion to dismiss is currently scheduled for hearing on May 20, 2011. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion. The Case Management Conference scheduled for May 20, 2011 at 2:30 p.m. is continued to July 1, 2011 at 2:30 p.m.

**BACKGROUND**

This case concerns an incident that occurred on December 11, 2009. Plaintiff David Morse alleges that he is a veteran journalist who was covering a demonstration on that date against budget cuts at the University of California, Berkeley. Compl. ¶ 1. He alleges that police officers targeted him in order to obtain photographs that one police officer described as "evidence of a crime." *Id.* He claims that he was improperly detained, arrested, and subjected to excessive force; that his property was subject to searches and seizures without proper cause and without the proper warrants being issued; that charges

were later increased against him do delay his ability to make bail; and that police officers made material misrepresentations on a search warrant application. He alleges that these acts were part of an illegal effort to seize photographs from his camera, interfere with his efforts to cover the protest, and chill him from reporting news in the future.

Named as defendants in plaintiff's complaint are the Regents of the University of California, Berkeley ("Regents"); the University of California at Berkeley Police Department ("UCPD" or "Department"); University of California of Berkeley Police Chief Mitchell J. Celaya III; UCPD Detective Nicole Miller; UCPD Detective Reich; UCPD Sergeant Harris; UCPD Officer Wyckoff; and UCPD Officer Manchester.[1] Plaintiff brings claims under 42 U.S.C. section 1983 for violation of the First Amendment, the Fourth Amendment, and the Excessive Bail Clause of the Eighth Amendment. He brings a claim for violation of the Privacy Protection Act, 42 U.S.C. section 2000aa *et seq*. And he requests declaratory and equitable relief under 28 U.S.C. sections 2201 and 2202.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the

---

[1] Also named in the complaint were the City of Berkeley Police Department; City of Berkeley Police Chief Michael K. Meehan; the County of Alameda; the Alameda County Sheriff's Department; and Alameda County Sheriff Gregory J. Ahern. These defendants have been dismissed without prejudice by stipulation of the parties. *See* Docs. 15 & 16.

court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

## ANALYSIS

Defendants move to dismiss all claims against the Regents and the Department; the Excessive Bail claim against all defendants; the Section 1983 claims against defendant Celaya in his individual capacity; and the Privacy Protection Act claim against defendant Celaya.

### I. Defendant Regents of the University of California

Plaintiff does not contest defendants' motion to dismiss all claims against the Regents and the Department. Defendants' motion to dismiss these claims is GRANTED.

### II. Eighth Amendment claim for Excessive Bail

Defendants move to dismiss plaintiff's Section 1983 claim for violation of the Excessive Bail Clause of the Eighth Amendment. First, they argue that an Excessive Bail Clause claim can only be maintained if a person's bail was excessive in light of the actual charges facing him. Second, they argue that defendants were not factually or proximately responsible for setting plaintiff's bail, since bail is set at the discretion of a judge.

The opening clause of the Eighth Amendment to the U.S. Constitution reads: "Excessive bail shall not be required." U.S. Const. Amend. VIII. This "Excessive Bail Clause prevents the imposition

of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail." *Galen v. County of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007). When faced with claims of excessive bail, courts "look to the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests." *Id.* "The state may not set bail to achieve invalid interests, nor in an amount that is excessive in relation to the valid interests it seeks to achieve." *Id.* (citations omitted).[2]

California Penal Code section 1275 defines the state interests that judicial officers are to consider in setting bail:

> (a) In setting, reducing, or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case. The public safety shall be the primary consideration.
>
> In considering the seriousness of the offense charged, the judge or magistrate shall include consideration of the alleged injury to the victim, and alleged threats to the victim or a witness to the crime charged, the alleged use of a firearm or other deadly weapon in the commission of the crime charged, and the alleged use or possession of controlled substances by the defendant.

The parties generally agree that a police officer may be liable for violation of the Excessive Bail Clause for deliberately or recklessly misleading the judicial officer setting bail, or otherwise preventing the judicial officer from exercising his independent judgment.[3] *See Wagenmann v. Adams*, 829 F.2d 196, 212 (1st Cir. 1987) (upholding plaintiff's jury verdict on excessive bail claim where "a jury could reasonably infer from th[e] evidence that the policeman did not merely arrest Wagenmann and then step aside, letting an independent judicial officer set bail"); *cf. Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) ("[T]he presumption of prosecutorial independence does not bar a subsequent § 1983 claim [for malicious prosecution] against state or local officials who improperly exerted pressure

---

[2] The Ninth Circuit and the Supreme Court have only ever assumed, without deciding, that the Excessive Bail Clause is incorporated against the states. *Id.* at 659 (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also id.* ("The opening clause of the Eighth Amendment . . . is one of the least litigated provisions in the Bill of Rights.").

[3] In their opening brief, defendants argue that plaintiffs may rely on a theory that defendants deliberately or recklessly misled the judicial officer setting bail, but that such a theory is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff counters that Rule 9(b) is inapplicable in constitutional tort cases, citing *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Plaintiffs are correct, and defendants have essentially abandoned their Rule 9(b) argument in their reply brief.

1 on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or
2 otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the
3 initiation of legal proceedings.").

4 Plaintiff's theory on his excessive bail claim is that defendants added unsupported charges for
5 the sole purpose of increasing his bail, so that they could keep him in custody longer, so that they could
6 obtain an illegal search warrant for his camera and deter him from exercising his first amendment rights
7 in the future. In support of this theory, plaintiff alleges the following facts.

8 When the police arrived at the location of the protest, defendant Wyckoff shouted at plaintiff "I
9 saw you take a picture of us. We want your camera. We believe your camera contains evidence of a
10 crime." Compl. ¶ 38. Plaintiff responded that he was a journalist, that he could show them his press
11 pass, and they should not take his camera. *Id.* ¶ 39. Rather than looking at plaintiff's press pass,
12 defendants Manchester and Wyckoff detained plaintiff. *Id.* Later, defendants Wyckoff and Harris, and
13 several other officers on the scene, did examine plaintiff's press pass, but they continued to detain him.
14 *Id.* ¶ 44. Plaintiff made a number of statements to defendants Manchester, Wychoff, and Harris about
15 being a member of the press, explaining that he did not think that it was legal for them to detain him and
16 seize his camera. *Id.* ¶ 49. Defendant Wyckoff told plaintiff that he was being arrested for "riot and
17 vandalism." *Id.* ¶ 50. Plaintiff was booked at the Santa Rita jail on those charges, made bail the next
18 morning, and was taken to a small, unlocked waiting room at the jail. *Id.* ¶¶ 52, 57. Forty-five minutes
19 later, he was informed that he was facing additional charges and that his bail had been increased. *Id.*
20 ¶ 58.

21 The UCPD and the Alameda County Sheriff's Department obtained a search warrant for
22 plaintiff's camera one hour before he made bail for the second time. *Id.* ¶ 60. The warrant was obtained
23 based on a "statement of probable cause" affidavit by defendant Miller, who was co-custodian of
24 plaintiff's property with defendant Reich. The affidavit included a false or exaggerated statement that
25 conflicts with the UCPD's police report (that plaintiff was running when he was stopped) and omits any
26 mention of the fact that plaintiff was a journalist. *Id.* ¶¶ 61–62, Exs. C–E. All charges against plaintiff
27 were dropped at his initial appearance a few days later. *Id.* ¶ 67. Six months after that, the Alameda
28 County Superior Court quashed the search warrant, ordered the return of all copies of his unpublished

photographs, and ordered that a declaration be filed with that court detailing to which persons or entities the photographs had been distributed. *Id.* ¶ 78. The ruling was made pursuant to California Penal Code section 1524(g), which, among other things, prohibits the issuance of a warrant to obtain unpublished photographs that members of the press "obtained or prepared in gathering, receiving or processing of information for communication to the public." *See id.*; Cal. Penal Code § 1524(g); Cal. Evid. Code § 1070. One photograph—of an approaching UCPD car—has never been returned. Compl. ¶ 80.

A plaintiff can state a claim under the Excessive Bail Clause where defendants deliberately or recklessly mislead a judicial officer to raise an arrestee's bail for the purpose of buying time to obtain an unlawful search warrant. *See Galen*, 447 F.3d at 661 (explaining that a plaintiff can prevail on a claim that a California state court bail enhancement violated the Excessive Bail Clause if he can show that his bail was enhanced "for purposes unauthorized by California law"). Here, plaintiff argues that defendants deliberately misled the judicial officer by bringing what essentially amounted to additional false charges against plaintiff in order to persuade the judicial officer to increase bail. Plaintiff has alleged sufficient facts to support his theory.[4] The question raised by this motion is whether plaintiff's theory is viable under the Excessive Bail Clause, given the indirect means defendants allegedly used in order to obtain the higher bail, and given the intervening actions of the judicial officer who actually set bail. Essentially, it is a question of proximate causation.

*Bretz v. Kelman*, 773 F.2d 1026 (9th Cir. 1985) (en banc) and *Wagenmann v. Adams*, 829 F.2d 196 (1st Cir. 1987) stand for the proposition that a police officer may be held responsible for proximately causing bail to be set at a certain level, even if the police officer's misconduct occurred in a case unrelated to the case where the bail was set, and even if a presumptively independent judicial officer actually set bail.[5] In *Bretz*, the alleged misconduct occurred in one case, the plaintiff's bail was

---

[4] In their reply brief, defendants argue that the documents attached to plaintiff's complaint could not have played any role in the bail determination in the case, because they were created after the charges against him had been increased. Plaintiff's theory does not depend on the documents having been created before the charges were increased.

[5] In *Bretz*, the Ninth Circuit, sitting en banc, explained that a constitutional tort can be brought under the Due Process Clause "when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* at 1031. The plaintiff in that case alleged that "the defendants, by means

6

denied in an unrelated criminal case, and the plaintiff proceeded on a Due Process theory. Here, as in *Wagenmann*, the alleged misconduct and the bail determination occurred in the same case, and the plaintiffs have proceeded on an Excessive Bail theory. *See also United States v. Kennedy*, 593 F. Supp. 2d 1221 (W.D. Wash. 2008) (finding a violation of the Excessive Bail Clause where conditions of bail were changed solely because a new charge was brought against defendant, but "the facts supporting that charge" had "long been known to the government" and there was "no showing" that the defendant was "any more of a flight risk or threat to the community . . . than he was at the time of his original appearance bond"). This case is more similar to *Wagenmann*, and plaintiff has successfully stated a claim under the Excessive Bail Clause.[6] Defendants' motion to dismiss plaintiff's Eighth Amendment claim is DENIED.

**III.  Section 1983 claims against defendant Celaya**

Defendant Celaya moves to dismiss the Section 1983 claims made against him in his individual capacity, arguing that plaintiff has not stated sufficient facts to suggest that he directed or participated in the contested decisions. Plaintiff responds by putting forward two theories as to why defendant Celaya should be personally responsible for the alleged constitutional violations. The first is that he failed to train or supervise those individuals who directly deprived plaintiff of his constitutional rights.

---

of false testimony, perjury and other prosecutorial misconduct" in one case caused him to be "denied . . . bail on unrelated charges and ultimately caused his imprisonment in a maximum security facility all in violation of his right to liberty under the Fourteenth Amendment." *Id.* at 1027.

*Bretz* was cited with approval by the First Circuit in *Wagenmann*, where an Excessive Bail Clause claim was brought against a police officer, to support that court's decision that the plaintiff had proven proximate causation despite the fact that it was the court clerk who actually set the plaintiff's bail. 928 F.2d at 212. In *Wagenmann*, plaintiff's theory was that a police officer manipulated the bail process to allow for the continued detention of the plaintiff by causing the plaintiff's bail to be set at $500 when he knew that the plaintiff was in possession of only $480. *Id.*

[6] Defendants argue that *Williams v. Farrior*, 626 F. Supp. 983 (S.D. Miss. 1986) supports a different conclusion. It does not. In *Williams*, a criminal defendant had been granted bail, but the sheriff refused to approve the bondsman selected by the criminal defendant. Under Mississippi law at the time, the sheriff had a duty to review the adequacy of a proffered bondsman, to satisfy himself as to the reliability of the surety, and to risk being personally liable for the amount of the bond should the surety prove insufficient. *Id.* at 987 (citing Miss. Code § 99–5–19 (1986)). As the court explained, "[t]o find a constitutional violation in a sheriff's denial of a proffered bondsman would place the sheriff in the untenable position of either approving a surety for whose insufficiency or insolvency he is personally liable or facing personal liability under § 1983." Nothing in the court's opinion suggests that the sheriff's rejection of the proffered bondsman was based on an improper or *ultra vires* motivation.

The second is that, by his policy decisions, he set in motion the acts that deprived plaintiff of his constitutional rights.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* liability." *Iqbal*, 129 S. Ct. at 1948. However, a supervisor may be held liable in his individual capacity where he "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010). "Thus, supervisors 'can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)). In order to prevail on a failure to train claim, a plaintiff must prove that training was inadequate, and that the inadequacy of training was the result of a "deliberate" or "conscious" choice on the part of the trainer. *Canell v. Lightner*, 143 F.3d 1210, 1213–14 (9th Cir. 1998). As with a traditional tort, there must also be a causal connection between the failure to train and the ultimate deprivation of rights.

In his complaint, plaintiff alleges that

> 13. Defendant MITCHELL J. CELAYA III is responsible for the operations, practices, and customs of UCPD. Defendant Celaya is also responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the officers under his supervision and command.
>
> . . . .
>
> 81. Defendant[] Celaya . . . failed to properly screen, train and/or supervise [his] officers and deputies. Notably, Defendant[] Celaya had actual notice of statutory protections for journalistic work product and unpublished documentary materials prior to Morse's arrest, as several ranking UCPD officers are presently defendants in litigation arising out of a 2008 raid of a Berkeley newspaper officer that commenced in January 2009.

Compl. In a footnote at the end of Paragraph 81, plaintiff cites Case No. 09-00168-JSW, filed in the Federal District Court for the Northern District of California on January 14, 2009. Plaintiff lists the named plaintiffs in that case, and explains that all but one was sued for violating the Privacy Protection Act. *Id.* ¶ 81 n.1.

Plaintiff's allegations are sufficient to state Section 1983 claims against defendant Celaya in his

individual capacity.[7] Defendant Celaya's motion to dismiss the Section 1983 claims against him is DENIED.

### IV. Privacy Protection Act claims against defendant Celaya

Defendant Celaya moves to dismiss the Privacy Protection Act ("PPA" or "Act") claim against him because the complaint does not actually make any allegations of wrongdoing against him under the Act. He argues that a plaintiff cannot make a failure to supervise or failure to train argument under the PPA, and that only people who actually participate in the search or seizure can be held liable for violating the statute. Plaintiff responds that a PPA claim may be founded on the same types of supervisory failures as Section 1983 claims.

The Privacy Protection Act, 42 U.S.C. section 2000aa *et seq.*, "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996). The Act provides protection for both "work product materials" and "documentary materials," including photographs:

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication. . . .
>
> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication. . . .

---

[7] Defendant Celaya argues that a failure to train claim cannot be based on a single incident. Here plaintiff has based his claim not only on the incident in question, but also the incident at issue in Case No. 09-00168. Defendant Celaya argues that he was not on notice that the officers involved in this case were in need of remedial training, only that the officers in Case No. 09-00168 were. That is an argument better made at the summary judgment stage, not here, where the Court is merely concerned with facial plausibility. Finally, defendant Celaya argues that Case No. 09-00168 has nothing to do with the constitutional claims in this case, because was brought under the Privacy Protection Act, and the statutory protections in the Privacy Protection Act go beyond the protections afforded under the Constitution. Again, that argument is better made at the summary judgment stage. The Court notes, however, that the plaintiff in Case No. 09-00168 sued the UCPD chief in her official capacity for First and Fourth Amendment violations as well. *See* First Am. Compl., Case No. 09-00168 (Docket No. 39).

42 U.S.C. § 2000aa(a), (b). There are certain exceptions to the Act's prohibition of searches and seizures, including when "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1), (b)(1).

The PPA provides for a cause of action for damages "against a State which has waived its sovereign immunity . . . or against any other governmental unit . . . for violations of this chapter by their officers or employees while acting within the scope or under color of their office or employment" or "against an officer or employee of a State who has violated this chapter while acting within the scope or under color of his office or employment, if such State has not waived its sovereign immunity as provided [above]." 42 U.S.C. § 2000aa-6(a). The question here is whether liability under that second prong is limited to those personally involved in the statutory violation, or whether, like with Section 1983 claims, it is sufficient to show a causal connection between the person's conduct and the statutory violation.

There are no relevant published Ninth Circuit opinions, and in fact there are few appellate court opinions that discuss the PPA at all. The Eighth Circuit has held that the statute covers a defendant who "directed, supervised, or otherwise engaged in the execution of the warrant to such an extent that a finding can be made that she 'searched for or seized' the [materials]." *Citicasters v. McCaskill*, 89 F.3d 1350, 1356 (8th Cir. 1996). The Tenth Circuit has held that the prohibitions in the PPA only apply where a defendant "directed, controlled or participated in the search or seizure," and does not cover "predicate acts by other officials, such as the legal review of the warrant application" by a district attorney "who did not engage in a search." *Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007); *see also id.* (contrasting the case with *Citicasters*, where "the facts centered around the prosecutor's actions taken after the search warrant was issued and involved an allegation that the prosecutor actively assisted in the search").

The Court finds that a plaintiff may sue a state actor who can be said to be responsible for a violation of the subpoena-first rule contained within the PPA; as with a Section 1983 claim, this permits a suit based on a theory of supervisory liability where the supervisor was either personally involved in the statutory violation, or where the plaintiff can show a causal connection between the person's conduct

10

and the statutory violation. The language of the statute permits this, and there is nothing the legislative history that would caution against such a rule. *See* 42 U.S.C. §§ 2000aa *et seq.*; S. REP. 96-874, 1980 U.S.C.C.A.N. 3950; H.R. CONF. REP. 96-1411, 1980 U.S.C.C.A.N. 3972. Nor is the rule inconsistent with *Mink*'s holding that a defendant who "directed, controlled or participated in the search or seizure" may be held liable under the Act. *See* 482 F.3d at 1258. Indeed, because the statute itself was enacted to provide protections previously thought by many to be guaranteed by the constitution before *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), it makes sense that it would impose liability in a manner that parallels Section 1983, to the extent permitted under the Commerce Clause. S. REP. 96-874, 1980 U.S.C.C.A.N. 3950, 3950–51, 3956, 3961 (explaining that the statute was passed pursuant to the Commerce Clause, that it was "prompted by" *Zurcher*'s holdings regarding the First and Fourth Amendments, and that it provides for personal liability of state actors acting under color of law because it was not clear, at the time the legislation was passed, whether Congress could override Eleventh Amendment immunity when legislating under the Commerce Clause).

Plaintiff's allegation regarding defendant Celaya's failure to screen, train, and supervise relates specifically to the statutory provisions of the PPA. Because he has alleged sufficient facts to support his claim that there is a causal connection between defendant Celaya's conduct and the statutory violation, defendant Celaya's motion to dismiss the PPA claim is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. All claims against the Regents of the University of California, Berkeley and the University of California at Berkeley Police Department are DISMISSED. All other claims remain in the case. (Doc. 20). The Case Management Conference scheduled for May 20, 2011 at 2:30 p.m. is continued to July 1, 2011 at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: May 18, 2011

SUSAN ILLSTON
United States District Judge

11